UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JOHN EUGENE MEASE, #213302,                    Case No. 2:20-cv-176

        Plaintiff,                                  Hon. Janet T. Neff
                                               U.S. District Judge

    v.

RICKY J. WONNACOTT, et al.,

        Defendants.

_____/

## REPORT AND RECOMMENDATION

### I.     Introduction

This Report and Recommendation (R&R) addresses Defendants' motion for partial summary judgment based on Plaintiff's failure to exhaust his administrative remedies.  (ECF No. 32.)

Plaintiff — state prisoner John Eugene Mease — filed suit pursuant to 42 U.S.C. § 1983 on July 23, 2020, in the Eastern District of Michigan.  In his verified complaint, Mease asserts that while he was incarcerated at Chippewa Correctional Facility (URF) in Kincheloe, Michigan, and Macomb Correctional Facility (MRF) in Lenox, Michigan, various Michigan Department of Corrections (MDOC) employees at these institutions[1] violated his First, Eighth, and Fourteenth Amendment rights as

---

[1]     Defendants originally identified by Mease were: (1) MDOC  Director Heidi Washington, (2) URF Warden Connie Horton, (3) URF Deputy Warden Unknown Yon, (4) Unknown Nurse at URF, (5) URF Assistant Deputy Warden James Corrigan, (6) URF Assistant Deputy Warden R. Batho, (7) URF Resident Unit Manager (RUM) Shane Thompson, (8) URF Prison Counselor (PC) J. Wonnacott, (9) Unknown

well as his due process rights and rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA).  (ECF No. 1, PageID.8-9.)  Specifically, Mease says that MDOC employees at URF and MRF harassed, retaliated, and conspired against him for months after Mease refused to break his Ramadan fast to take medication during a scabies outbreak at URF.  (*Id.*, PageID.3-7.)

On September 15, 2020, the Eastern District of Michigan dismissed Mease's claims against MRF Defendants Bridges, Slater, and Dye based on Mease's failure to set forth factual allegations against them in his complaint and transferred the case to this Court.  (ECF No. 4.)

On May 13, 2021, this Court issued an Opinion (ECF No. 14) and Order (ECF No. 15) dismissing all but Mease's retaliation claims against PC Wonnacott, and COs McKinney, Lemmerman, Wech, and Simpson.

The remaining Defendants now move for partial summary judgment, asserting that Mease did not properly exhaust his administrative remedies with respect to the majority of his retaliation claims.  (ECF No. 32.)  More specifically, Defendants argue that Mease did not properly exhaust any of his misconduct-related claims because he did not assert retaliation during the misconduct hearing procedure. (ECF No. 33, PageID.132.)  Defendants further contend that the only claim that Mease properly exhausted through the MDOC's grievance procedure is his retaliation claim against Defendants McKinney and Lemmerman for denying him access to the URF Law

---

Lemmerman at URF, (10) C. McKinney at URF, (11) Unknown Wech, (12) Unknown Simpson at URF, (13) Hearing Investigator Unknown Bridges at MRF, (14) MRF Sergeant Unknown Slater, and (16) MRF Corrections Officer (CO) Unknown Dye.

Library (Claim Three from the claims table, infra pages 15-16). (*Id.*, PageID.132-133.)

In response, Mease says that that MDOC improperly rejected his grievances, rendering the grievance process unavailable. (ECF No. 34, PageID.202.) Mease further asserts that his Misconduct Hearing Reports do not accurately reflect all of his statements. (*Id.*, PageID.204-206.)

The undersigned respectfully recommends that the Court **<u>deny</u>** Defendants' motion for summary judgment based on exhaustion with respect to the following:

- Mease's retaliation claim against CO McKinney, PC Wonnacott and CO Lemmerman for depriving him of his personal property and religious services and terminating his employment (Claim One),

- Mease's retaliation claim against CO Lemmerman for issuing a misconduct ticket on May 31, 2019 (Claim Two),

- Mease's retaliatory misconduct claim against CO McKinney (Claim Five),

- Mease's retaliatory sanction claim against CO Wech (Claim Seven), and

- Mease's retaliatory sanction claim against CO McKinney (Claim Nine).

The undersigned respectfully recommends that the Court **<u>grant</u>** Defendants' motion for summary judgment with respect to the following:

- Mease's retaliation claim against CO Lemmerman for issuing a misconduct ticket on June 29, 2019 (Claim Four),

- Mease's retaliation claim against CO Simpson for issuing a misconduct ticket on June 30, 2019 (Claim Six), and

- Mease's retaliation claim against CO Simpson for issuing a misconduct ticket on July 5, 2019 (Claim Eight).

## II.    Relevant Factual Allegations

Mease is a member of the Nation of Islam.  (ECF No. 1, PageID.3.)  On May 5, 2019, while incarcerated at URF, Mease began participating in the Ramadan fast. The fast was set to end on June 3, 2019.   (*Id.*)

Mease says that on May 20, 2019, his housing unit, C-Unit, experienced a scabies outbreak.  (*Id.*)  As a result, URF staff placed C-Unit inmates on a six-week quarantine.  (*Id.*)  When staff first became aware of the outbreak, Mease was told to return to his housing unit to be weighed as a part of the facility's outbreak procedure. (*Id.*)  While in line to be weighed, Defendant CO McKinney approached Mease and instructed him to go to his bunk.  When Mease explained that he had not been weighed, McKinney stated "go to your bunk or I'll put your ass in the hole."  (*Id.*) Mease says that he complied with McKinney's order, but later spoke with Defendant PC Wonnacott about the encounter.  (*Id.*)  PC Wonnacott told Mease that McKinney was likely having a bad day due to the scabies outbreak.  Mease then asked Wonnacott if he was aware that those participating in the Ramadan fast would be unable to take medication before sunset.  PC Wonnacott initially told Mease it would not be an issue.  (*Id.*)

But Mease says that PC Wonnacott called a meeting with Ramadan participants on May 22, 2019, announcing that "refusal to take medication at 1:00pm would result in 96 days in the hole."  (*Id.*)  When Mease informed Wonnacott that it

was against his religious tenants to break fast for the medication if he was not sick or on a journey, he says that Wonnacott simply stated that he had heard enough from Mease.  (*Id.*)  According to Mease, Wonnacott's announcement led all Ramadan participants other than Mease to break their fasts.  Mease was ultimately placed in administrative segregation and given his medication after sunset.  (*Id.*, PageID.4.) He stayed in administrative segregation until May 24, 2019.  Mease says that when he returned to C-Unit, he was deprived of his personal property and religious services.  (*Id.*)

According to Mease, a second dose of medication was administered on May 29, 2019, and Mease was again placed in administrative segregation and given his medication after sunset.  He stayed in administrative segregation until May 31, 2019. (*Id.*) Mease says that when he returned to C-Unit this time, another prisoner was placing his belongings in Mease's bunk.  The prisoner said that CO Lemmerman had instructed him to take Mease's bunk.  (*Id.*)  Mease informed staff that his bunk was now occupied, and URF Lieutenant Biggers told Mease to wait in the TV room until PC Wonnacott could find him a new bunk.  Although Mease complied, he says that he witnessed Defendant CO Lemmerman begin to write him a misconduct ticket. (*Id.*)  Mease then complained to URF Inspector Miller, explaining that the unit staff were harassing and retaliating against him based on his refusal to break his Ramadan fast by issuing misconducts, taking away his religious services, and terminating him from his employment.  (*Id.*, PageID.4-5.)

According to Mease, Inspector Miller responded that URF administrators did not condone any prohibition on Mease's ability to attend religious services, nor his termination.  (*Id.*)  Miller allegedly instructed staff to contact the Chaplain and Classification Director in order to have Mease's religious services and employment reinstated.  (*Id.*, PageID.5.)  Inspector Miller informed Mease that he could not move Mease to another housing unit until the quarantine was over.  After his conversation with Inspector Miller, Mease says that he approached PC Wonnacott about the continued retaliation by Wonnacott, Lemmerman, and McKinney.  (*Id.*)  Mease says that Wonnacott refused to address the issue.

On June 1, 2019, Mease says that he submitted grievance URF-19-06-1554-28c against Defendants Wonnacott and McKinney.  (*Id.*)  As a result of submitting this grievance, Mease says that he faced additional retaliation and harassment from PC Wonnacott, CO Lemmerman, and CO McKinney.  Mease says that he asked Deputy Warden Yon to intervene.  Yon told Mease to avoid misconducts and that Yon would move Mease to a new unit as soon as the quarantine ended.  (*Id.*)

On June 29, 2019, Mease says that he had an encounter with Defendants McKinney and Lemmerman in which they mocked him for complaining to Deputy Warden Yon and told Mease that they ran C-Unit.  (*Id.*)  At 12:00pm the same day, Mease approached McKinney and asked McKinney to sign off on his itinerary to go to lunch and the URF Law Library.  (*Id.*)  McKinney refused to sign off.  Twenty minutes later, Mease asked both McKinney and Lemmerman to sign off on his itinerary.  (*Id.*)  Both Defendants refused.  Mease says that he reported the incident

6

to a URF Sergeant in the chow hall, and then filed grievances <u>URF-19-07-1847-17A</u> and <u>URF-19-07-1888-29A</u> against McKinney and Lemmerman.  (*Id.*, PageID.6.)  The next day, June 30, 2019, Mease was notified that CO Lemmerman had written a Class II misconduct against Mease for insolence towards CO McKinney and CO McKinney had written a Class III misconduct against Mease for excessive noise.  (*Id.*)

Also on June 30, 2019, Mease was called to review the excessive noise misconduct with Defendant CO Simpson. Mease says that CO Simpson checked the box indicating that Mease would not sign off on the grievance without asking Mease what he wanted to do.  (*Id.*)  Mease also says that when he asked for more grievances, Defendant CO Wech intervened and told Mease to ensure he gets the names right in the grievances, telling Mease "we're a team, your ass is out of here."  (*Id.*)  That evening, Simpson wrote a Class III misconduct against Mease for violating posted rules by standing in the TV room.  (*Id.*)

On July 1, 2019, URF Captain Burke summoned Mease for a hearing on the Class II insolence misconduct written by CO Lemmerman.  (*Id.*, PageID.7.)  The hearing was ultimately postponed due to a computer problem.  (*Id.*)

Mease says that the hearing for the Class III misconduct written by McKinney took place on July 5, 2019.  (*Id.*, PageID.6.)  CO Wech acted as the Hearing Officer. Wech found Mease guilty and issued the maximum sanction: five days of toplock.[2]

---

[2]      Toplock, also known as temporary segregation, involves the confinement of a prisoner to his quarters unless otherwise authorized.

(*Id.*)  On the same day, Simpson wrote Mease a Class III misconduct for violating posted rules by using profanity.[3]  (*Id.*)

The hearing for the Class III profanity misconduct written by CO Simpson took place on July 7, 2019.  CO McKinney acted as the Hearing Officer.  McKinney found Mease guilty and issued the maximum sanction: five days in toplock.  (*Id.*)

On July 9, 2019, Mease says that his supervisor terminated his employment because Mease had received a total of fifteen days of toplock.  (*Id.*, PageID.7.)  On July 10, 2019, Defendant Wonnacott, URF Warden Corrigan, and Assistant Deputy Warden Batho prepared an order to transfer Mease from URF to MRF.

On July 13, 2019, Mease learned that Captain Burke found him guilty of the June 29, 2019 insolence misconduct ticket authored by CO Lemmerman.  (*Id.*)  Mease immediately appealed the guilty finding, and, on July 15, 2019, Deputy Warden Yon ordered a rehearing on the Class II misconduct.  (*Id.*)  On July 18, 2019, Mease says that he was transferred to MRF.

In addition to the aforementioned grievances, Mease says that he submitted the following grievances in relation to his retaliation claims: URF-19-07-1865-28C (alleging retaliatory harassment), URF-19-07-1848-27A (alleging retaliation based on grievances), URF-19-07-1849-27A (alleging retaliation based on grievances).  (*Id.*, PageID.8.)

---

[3]    Mease attached the declaration of Maurice Simpson, #952251, to his complaint. There, Simpson days that he was with Mease during the time that Mease allegedly used profanity, and that he did not hear Mease use any profanity.  (ECF No. 1, PageID.74.)

### III.    Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[4] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### IV.    Exhaustion

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549

---

[4]    If defendants move for summary judgment on the basis of exhaustion under the PLRA, and the court determines that there is a genuine issue of material fact, the issue need not be submitted to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015). Instead, the court may conduct a bench trial to resolve the issue.  (*Id.*)  In a bench trial on exhaustion, the defendants must show that the plaintiff failed to exhaust his administrative remedies by a preponderance of the evidence.  *Id.* at 677 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)) ("Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence."); *Richards v. Perttu*, No. 2:20-CV-76, 2022 WL 842654, at *1 (W.D. Mich. Mar. 22, 2022) (affirming a magistrate judge's ruling that the preponderance of the evidence standard applies in a bench trial on exhaustion).

U.S. 199, 212-16 (2007).  "[W]here the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001).  Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies.  *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001).  A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process.  *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). To properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules.  *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91

(2006).  "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'"  *Jones*, 549 U.S. at 218-19.  In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedure may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits."  *Porter*, 534 U.S. at 524.  In the Court's view, this objective was achieved in three ways.  First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."  *Id.* at 525.  Second, "the internal review might 'filter out some frivolous claims.'"  *Id.* (quoting *Booth*, 532 U.S. at 737*).  And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id*. When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

MDOC Policy Directive (P.D.) 03.02.130 (effective March 18, 2019) sets forth the applicable grievance procedures for prisoners in MDOC custody at the time

relevant to this complaint.  Inmates must first attempt to informally resolve a grievable issue within two business days of becoming aware of the issue, unless prevented by circumstances beyond his or her control.  *Id.* at ¶ Q.  If informal resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted informal resolution.  *Id.* at ¶¶ Q, W.  The inmate submits the grievance to a designated Grievance Coordinator, who assigns the grievance to a respondent.  *Id.* at ¶ W.  The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely.  Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates, times, places and names of all those involved in the issue being grieved are to be included."  *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due.  MDOC Policy Directive 03.02.130 at ¶¶ U, DD.  The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances.  *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form.  *Id.* at ¶¶ U, HH.  The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days

after the date the Step II response was due.  *Id.*  The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director.  *Id.* at ¶ II.

When the grievance procedures are not available because the issue presented is non-grievable, exhaustion of those procedures is not required.  It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Ky. Dept. of Corr*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well-known proverb states, they cannot have their cake and eat it too.").

However, when other administrative remedies are available, the prisoner is required to exhaust those remedies prior to filing a federal lawsuit.  For example, when an inmate claims that he received a retaliatory misconduct ticket, whether a Class I, Class II or Class III misconduct,[5] the inmate must raise the issue during the initial misconduct hearing.  *Siggers v. Campbell*, 652 F.3d 681, 693-94 (6th Cir. 2011)

---

[5]    Violations of the MDOC's written rules are classified as either Class I, Class II or Class III misconducts.  Class I consists of the most severe violations, and Class III consists of the least severe.  While Class I misconducts are considered "major" misconducts and are "subject to all hearing requirements set forth in MCL 791.252", Class II and III misconducts are considered "minor" misconducts and are "subject to all requirements currently set forth in Department Administrative Rules and policy directives for 'minor' misconducts."  MDOC Policy Directive (PD) 03.03.105 ¶ B.

("This grievance relates to the issuance of major misconduct reports, and Michigan's rules provide that the only avenue for challenging such reports is a hearing.").[6]

If the inmate is claiming to have received a retaliatory Class I misconduct, he must then submit a Request for Rehearing raising the retaliation issue. *Id.*; MDOC PD 03.03.105 ¶¶ SSS-TTT (setting forth the Class I misconduct appeal process). Alternatively, if the inmate is claiming to have received a retaliatory Class II or III misconduct, he or she must file an appeal based on retaliation. *Rush v. Newcomb*, No. 2:18-cv-23, 2019 WL 3755967, at *6 (W.D. Mich. May 24, 2019), *report and recommendation adopted*, 2019 WL 3733846 (W.D. Mich. Aug. 8, 2019); MDOC PD 03.03.105 ¶¶ UUU-XXX (setting forth the Class II and III misconduct appeal process).

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

---

[6]    The undersigned acknowledges that in an unpublished opinion written the same year as *Siggers*, the Sixth Circuit stated that "[a]s distinct from the outcomes of misconduct hearings, the filing of retaliatory misconduct reports is grievable under MDOC Policy Directive 03.02.130." *Reynolds-Bey v. Harris*, 428 F. App'x 493, 501 (6th Cir. 2011). Because published decisions bind this Court, and *Reynolds-Bey* is not a published decision, the undersigned need not resolve this conflict. 6 Cir. R. 32.1(b); *see also Crump v. Lafler*, 657 F.3d 393, 405 (6th Cir. 2011) ("Unpublished opinions are, of course, not binding precedent on subsequent panels . . . but their reasoning may be 'instructive' or helpful." (citation omitted)). *Siggers* controls. However, if the MDOC responds to a grievance concerning a retaliatory misconduct ticket on its merits, it waives the enforcement of this procedural rule. *Reed-Bey*, 603 F.3d at 325; *Colvin v. Washington*, No. 2:18-CV-150, 2019 WL 8138042, at *5 (W.D. Mich. Nov. 26, 2019), *report and recommendation adopted*, No. 2:18-CV-150, 2020 WL 1043862 (W.D. Mich. Mar. 4, 2020).

14

> [A] prisoner ordinarily does not comply with MDOCPD 130—and
> therefore does not exhaust his administrative remedies under the
> PLRA—when he does not specify the names of each person from
> whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322,
> 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison
> remedies in the manner the State provides—by, say, identifying *all*
> relevant defendants—not only furthers [the PLRA's] objectives, but
> it also prevents inmates from undermining these goals by
> intentionally defaulting their claims at each step of the grievance
> process, prompting unnecessary and wasteful federal litigation
> process."). An exception to this rule is that prison officials waive any
> procedural irregularities in a grievance when they nonetheless
> address the grievance on the merits. *See id*. at 325. We have also
> explained that the purpose of the PLRA's exhaustion requirement "is
> to allow prison officials 'a fair opportunity' to address grievances on
> the merits to correct prison errors that can and should be corrected
> to create an administrative record for those disputes that eventually
> end up in court." *Id*. at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[7]

## V.    Analysis

Meases claims are summarized below.

| Claim Number | Defendant(s) | Claim | Date or Date Range of Incident(s) | Factual Allegations |
|---|---|---|---|---|
| One | McKinney, Wonnacott, Lemmerman | First Amendment Retaliation (property deprivation) | May 24, 2022 | Mease refused to break his fast despite PC Wonnacott's order and took his medication after sunset in administrative segregation instead. When Mease returned to his housing unit, he was deprived of his personal property, terminated from his employment, and denied access to religious services.[8] |

---

[7]    In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id*. at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

[8]    This Court must read a pro se complaint indulgently. *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding the allegations in a pro se complaint "to less stringent standards than formal pleadings drafted by lawyers"). Although Mease does not specifically identify the individuals who deprived him of his property upon his return

| Claim Number | Defendant(s) | Claim | Date or Date Range of Incident(s) | Factual Allegations |
|---|---|---|---|---|
| Two | Lemmerman | First Amendment Retaliation (misconduct ticket) | May 31, 2019 | When Mease returned to his housing unit after refusing to break his fast for a second time, his bunk was occupied. Despite complying with Lt. Bigger's direction to wait for a new room assignment in the TV Room, CO Lemmerman wrote him a misconduct ticket. |
| Three | Lemmerman, McKinney | First Amendment Retaliation (refusal to sign itinerary) | June 29, 2019 | COs Lemmerman and McKinney retaliated against Mease by refusing to sign off on his itinerary to eat and go to the law library. |
| Four | Lemmerman | First Amendment Retaliation (misconduct ticket) | June 29, 2019 – June 30, 2019 | After COs Lemmerman and McKinney refused to sign off on Mease's itinerary to eat and go to the law library, Mease filed a grievance against them. The next day, Mease learned that Lemmerman issued Mease a Class II misconduct ticket. |
| Five | McKinney | First Amendment Retaliation (misconduct ticket) | June 29, 2019 – June 30, 2019 | After COs Lemmerman and McKinney refused to sign off on Mease's itinerary to eat and go to the law library, Mease filed a grievance against them. The next day, Mease learned that McKinney issued him a Class III misconduct ticket. |
| Six | Simpson | First Amendment Retaliation (misconduct ticket) | June 30, 2019 | Mease requested additional grievance forms during a review of the Class III misconduct authored by CO McKinney. COs Wech and Simpson were present. CO Wech told him that the staff were a team and that Mease would soon be "out of [there]." Later that day, CO Simpson issued Mease a Class III misconduct ticket. |
| Seven | Wech | First Amendment Retaliation (maximum sanction for misconduct) | July 5, 2019 | CO Wech conducted the hearing for the Class III misconduct written by CO McKinney. Wech found Mease guilty and gave him the maximum sanction even though Mease had not been found guilty of a misconduct for ten months prior. This sanction eventually led Mease's employer to terminate him. |
| Eight | Simpson | First Amendment Retaliation (misconduct ticket) | July 5, 2019 | CO Simpson issued Mease another Class III misconduct ticket. |
| Nine | McKinney | First Amendment Retaliation (maximum sanction for misconduct) | July 7, 2019 | CO McKinney conducted the hearing for the Class III misconduct ticket written by CO Simpson. McKinney found Mease guilty and gave him the maximum sanction. This sanction eventually led Mease's employer to terminate him. |

from administrative segregation, the surrounding allegations suggest that Mease was referring to Wonnacott, McKinney, and Lemmerman. (ECF No. 1, PageID.3-4.)

16

There are two overarching issues in this case with respect to the exhaustion of Mease's claims: first, whether Mease exhausted any of his claims through the grievance process; and second, whether Mease exhausted his misconduct-related claims (claims two, four, five, six, seven, eight, and nine) through the misconduct hearing process.

### a. The Grievance Process

Mease's relevant grievances, appeals, and responses are summarized below.

| Grievance Identifier | Defendants Grieved | Date or Date Range of Incident | Allegation(s) | Results at Step 1 | Results at Step 2 | Results at Step 3 |
|---|---|---|---|---|---|---|
| URF-19-06-1554-28C<br><br>(ECF No. 33-3, PageID.169-174.) | Wonnacott, McKinney, Lemmerman | May 20, 2019 – June 1, 2019 | Wonnacott told Ramadan participants they would receive 96 days in administrative segregation if they did not break their fast. Mease did not break his fast and instead took his medication in administrative segregation, but when he returned, he was denied access to his personal property and religious services. Mease was also terminated from his job. After Mease refused to break his fast for a second time, he returned to his unit to find another prisoner moving into his bunk. Mease spoke to Wonnacott about retaliation by Wonnacott, McKinney, and Lemmerman but Wonnacott ignored him. Mease now lives in constant fear of officers abusing his authority. Staff are engaging in retaliatory and discriminatory practices. | Rejected as containing multiple unrelated issues. | Rejection upheld. | Rejection upheld. |

| Grievance Identifier | Defendants Grieved | Date or Date Range of Incident | Allegation(s) | Results at Step 1 | Results at Step 2 | Results at Step 3 |
|---|---|---|---|---|---|---|
| URF-19-07-1847-17A (*Id.*, PageID.154-158.) | McKinney, Lemmerman | June 29, 2019 | McKinney and Lemmerman retaliated against Mease by refusing to sign off on Mease's itinerary. | Denied. | Denied. | Denied. |
| URF-19-07-1848-27A (ECF No. 1, PageID.57-58.) | McKinney | June 29, 2019 | McKinney retaliated against Mease for filing grievances by issuing Mease a Class III misconduct ticket. | Rejected as non-grievable. | Unknown.[9] | N/A |
| URF-19-07-1849-27A (*Id.*, PageID.51-52.) | McKinney, Lemmerman | June 30, 2019 | Lemmerman and McKinney worked together to falsify an insolence misconduct in retaliation for Mease's grievances and complaints. | Rejected as non-grievable. | Unknown.[10] | N/A |
| URF-19-07-1865-28C (ECF No. 33-3, PageID.164-168.) | Wech, Simpson, Wonnacott,, McKinney, Lemmerman | June 30, 2019 – July 2, 2010 | Simpson reviewed the Class III Misconduct written against Mease by McKinney.  Mease pled not guilty.  When Mease requested more grievance forms Wech intervened in the review and told him to make sure he gets the names in the grievances right, and that the staff is a team and Mease was out of there.  After the interaction, Simpson and Wech issued Mease misconducts, denied him mail, and shook him and his bunkmate down in order to harass and retaliate against him. | Rejected as containing multiple unrelated issues. | Rejection upheld. | Rejection upheld. |

---

[9]    Mease attached the Step I grievance and grievance rejection to his complaint. (ECF No. 1, PageID.57-58.)   It does not appear that Mease filed a Step II appeal for this grievance, and the Step III grievance report provided by Defendants shows that he did not file a Step III appeal.  (ECF No. 33-3, PageID.149-150.)

[10]    Mease attached the Step I grievance and grievance rejection to his complaint. (ECF No. 1, PageID.51-52.) It does not appear that Mease filed a Step II appeal for this grievance, and the Step III grievance report provided by Defendants shows that he did not file a Step III appeal.  (ECF No. 33-3, PageID.149-150.)

| Grievance Identifier | Defendants Grieved | Date or Date Range of Incident | Allegation(s) | Results at Step 1 | Results at Step 2 | Results at Step 3 |
|---|---|---|---|---|---|---|
| URF-19-07-1888-28A<br><br>(*Id.*, PageID.159-163.) | McKinney, Lemmerman | July 6, 2019 | McKinney and Lemmerman retaliated against Mease by again refusing to sign off on Mease's itinerary.  McKinney also retaliated against Mease by issuing Mease a ten-day toplock sanction. | Rejected as duplicative of URF-19-07-1847-17A. | Rejection upheld. | Rejection Upheld. |

Defendants begin by conceding that Mease exhausted his retaliation claim against COs Lemmerman and McKinney for refusing to sign off on his itinerary to go to the URF Law Library on June 29, 2019 (Claim Three in the Claim table above). (ECF No. 33, PageID.132.)  However, Defendants contend that this is the only claim that Mease exhausted.  Defendants aver that Mease was required to exhaust his misconduct-related claims through the misconduct hearing process, and that Mease did not properly exhaust the claims set forth in URF-19-06-1554-28C and URF-19-07-1865-28C because the grievances were rejected as containing multiple unrelated issues.[11]  (*Id.*, PageID.133.)  In response, Mease asserts that URF-19-06-1554-28C and URF-19-07-1865-28C were improperly rejected as containing multiple unrelated issues, thereby rendering the grievance process unavailable to him.  (ECF No. 34, PageID.200-202.)

---

[11]    Defendants also claim that URF-19-06-1554-28C cannot be found to exhaust any of Mease's claims because the grievance served as the protected conduct for Mease's retaliation claims.  (ECF No. 33, PageID.133.)  Without getting into the merits of Mease's claims, the undersigned respectfully disagrees.  The filing of grievances was not the only protected conduct alleged by Mease in his complaint — he also alleged that refusing to break his fast constituted protected conduct for which Defendants retaliated against him.  (ECF No. 1, PageID.4 ("[Mease] told Miller that these things were being done as further retaliation and harassment by C-Unit staff because he had refused to break his fast during Ramadan.").)

### i. Mease's Misconduct-Related Claims

The undersigned first agrees that there are no genuine issues of fact as to whether Mease exhausted his misconduct-related claims through the grievance process, and that he did not exhaust those claims through the grievance process.

As discussed above, complaints concerning "a decision made in a Class II or Class III misconduct hearing, including property disposition, and issues directly related to the hearing process," are non-grievable, and must be exhausted through the Class II or Class III appeal process. MDOC P.D. 03.02.130 ¶ J(11). This includes complaints concerning retaliatory misconduct tickets. *Siggers*, 652 F.3d at 693-94 (6th Cir. 2011). Like its other procedural requirements, the MDOC waives its requirement that prisoners exhaust their misconduct-related claims through the misconduct hearing process when it considers a retaliatory-misconduct-related grievance on the merits. *Reed-Bey*, 603 F.3d at 325; *Colvin v. Washington*, No. 2:18-CV-150, 2019 WL 8138042, at *5 (W.D. Mich. Nov. 26, 2019), *report and recommendation adopted*, No. 2:18-CV-150, 2020 WL 1043862 (W.D. Mich. Mar. 4, 2020).

 Mease's grievances reflect that the MDOC did not consider any of the misconduct-related claims on their merits. A review of the Step I grievance and appeal responses for URF-19-07-1848-27A, (ECF No. 1, PageID.57-58), and URF-19-07-1849-27A, (*id.*, PageID.51-52), shows that the grievances were rejected as non-grievable pursuant to MDOC P.D. 03.02.130 ¶ J(11). And URF-19-07-1888-28A was

rejected as duplicative of grievance <u>URF-19-07-1847-17A</u>.[12]  (ECF No. 33-3, PageID. 159-163.) Therefore, the claims in those grievances were not exhausted.

### ii.  Grievances Containing Multiple Unrelated Issues

Defendants further claim that neither <u>URF-19-07-1865-28C</u> nor <u>URF-19-06-1554-28C</u> served to exhaust any of Mease's claims because they were rejected as concerning multiple unrelated issues.  (ECF No. 33, PageID.133.)  True, the grievance forms and appeals reflect that these grievances were rejected at each step of the process.   (ECF No. 33-3, PageID.159-163, 169-174.)   But Mease says that the grievances were improperly rejected (ECF No. 34, PageID.200-201), and when the MDOC improperly rejects a grievance as concerning multiple unrelated issues, it renders the grievance process unavailable with respect to the claims therein, *McDuff v. Addis*, No. 1:17-CV-912, 2018 WL 3239491, at *4 (W.D. Mich. July 3, 2018).

In interpreting MDOC P.D. 03.20.130 ¶ J(1), this Court has given the phrase "multiple unrelated issues," its ordinary meaning — "multiple disputes, concerns, or problems that are 'not connected or associated.'" *Id.* at *3 (citation omitted).   In *McDuff*, this Court considered whether a grievance complaining of deliberate

---

[12]    Although it appears that the grievance may have been improperly rejected as duplicative, what matters with respect to Mease's retaliatory sanction claim is that the grievance was not considered on its merits.  The MDOC therefore did not waive its procedural requirement that claims related to decisions made in misconduct hearings are exhausted via the misconduct process.  MDOC P.D. 03.02.130 ¶ J(11); *Reed-Bey*, 603 F.3d at 325 (finding that the MDOC waives procedural irregularities when it nevertheless considers a prisoner's claim *on its merits*).   With respect to the remaining allegations in the grievance, specifically that COs McKinney and Lemmerman retaliated against Mease by refusing to sign his itinerary on July 6, 2019, Mease did not include those allegations in his complaint.  As such, that portion of the grievance is irrelevant to the exhaustion of Mease's remaining claims.

indifference involving two separate attacks and two separate misconduct tickets was properly rejected for grieving multiple unrelated issues. *Id.* at *2. The Court determined that the grievance was improperly rejected, as it raised "four events pertaining to a single issue." *Id.*

> In the Step I grievance for URF-19-07-1865-28C, Mease states:
>
>> On 6/30/19, Grievant was called to C-Unit Offier's Desk by C/O Simpson for review of a Class III Misconduct ticket written by C/O McKinney. Grievant plead [sic] not guilty. Grievant requested two grievances and C/O Wech intervened stating "theres four . . . make sure you get the name right." Grievant asked Wech what he was talking about and he stated "We're a team, your ass is out of here." Since this incident C/O's Wech and Simpson have threatened Grievant with misconducts, denied him mail, and have shookdown Grievant and his bunkie (only) trying to incite other prisoners in cube in conspiracy with McKinney, Lemmerman, and Wonnacott in their retaliatory harassment for prior complaints/grievances. End.

(*Id.*, PageID.167.) In addition to maintaining that the rejection was proper (ECF No. 33, PageID.133), Defendants assert that Mease waived any argument that the rejection was improper by failing to raise the issue in his Step III appeal (ECF No. 37, PageID.223). But the undersigned finds it unnecessary to determine whether Defendants are correct. In URF-19-07-1865-28C, Mease asserts that COs Simpson and Wech threatened to file misconducts against him, denied him access to his mail, and shook down his bunk — adverse actions that are not set forth in Mease's complaint. (*Id.*) In addition, this Court previously dismissed Mease's civil conspiracy claim against Defendants. (ECF No. 14, PageID.37-41.) As such, URF-19-07-1865-28C does not serve to exhaust any of Mease's remaining claims.

> In contrast, Mease's Step I grievance for URF-19-06-1554-28C states:

On 5/20/19, Grievant was required to leave work at MSI to return to C-Unity to be "quarantined" due to a scabies outbreak. Grievant spoke to PC Wonacott who ensured him that taking the medication after subset for Ramadan participants was no problem. On 5/22/19 that changed, Wonnacott informed Ramadan participants that refusal to take the medication at 1 PM would result in 96 days in the hole. All participants except for Grievant broke their fasts choosing to avoid the "hole." Grievant spoke with Healthcare, RUM Thompson, ADW Cargeny?, [sic] and Deputy Warden Yon, and was allowed to maintain his fast by being quarantined to Quarry unit to take the mediation at 9:30 PM, and being released back to C-Unit (139) on 5/24/19. Upon release, Grievant was denied access to personal property, was denied religious services, and was terminated from MSI work assignment. Grievant submitted kites to Deputy Warden, Chaplain, and Classification Director to no avail. On 5/29, the second dispensing of medication was done around 10 AM and C-Unit prisoners were allowed to move with the general population, however, Grievant was again placed in Quarry Unit for 2 days, and released on 5/31/19 with instructions to return to C-Unit 139. Grievant went to C-139 and found another prisoner moving his property to that bed. Grievant went to the Westside Anex and reported the above incident to Lt. Biggers, C/O Snyder, 2 Unknown Sgts and the URF Inspector. After investigation, the Inspector informed Grievant that his MSI job would be reinstated, that his religious services would be corrected, and that a bottom bunk in C-Unit would be issued because he could not move him to another Unit due to the 6 week quarantine. Grievant returned to C-Unit and spoke to Wonnacott about retaliation/religious discrimination arising from his refusal to break his fast by C/Os McKinney, [Lemmerman], and himself. Wonnacott avoided the issues, and refused to place Grievant's legal name back on the doorcard per PD 03.01.110F. Grievant states that he has maintained good conduct over the last 13 years in relation to staff, however, the retaliatory harassment and religious discrimination that he is being subjected to is very personal as it attacks my personal beliefs and my efforts to regain my freedom. Grievant is not under constant threat of abuse of authority by staff and loss of employment due to C-Unit staff's retaliatory/discriminatory practices. Grievant has also been placed at odds with other prisoners who submitted to Wonnacott's threats and broke their fasts. Grievant fears retaliatory actions to negatively effect his incarceration, and arbitrary transfer to less favorable classifications contrary to PD 03.03.130(L) and (M). End.

(ECF No. 33-3, PageID.273-274.)  Unlike <u>URF-19-07-1865-28C</u>, this grievance does concern a claim remaining in this case: Mease's claim against CO McKinney, CO Lemmerman, and PC Wonnacott for depriving Mease of his personal property and religious services and terminating his employment upon his return to C-Unit on May 24, 2022 (Claim One).  The undersigned must therefore consider whether the grievance was properly rejected as containing multiple unrelated issues.

As an initial matter, the undersigned acknowledges that <u>URF-19-06-1554-28C</u> is quite long compared to Mease's other grievances.  Be that as it may, MDOC policy does not prohibit a prisoner from providing a factual background related to his claim.[13]  Here, Mease utilized his Step I grievance form to explain that after he refused to break his fast, requiring him to quarantine in segregation, Defendants McKinney, Lemmerman, and Wonnacott deprived him of his personal property and religious services and terminated his employment to retaliate against him.  (*Id.*)  "A prisoner does not run afoul of [the] MDOC's 'unrelated issue' rule by reporting facts that bear directly on or arise out of a single claimed constitutional violation."  *McDuff*, 2018 WL 3239491, at *4.  As such, the MDOC's rejection of Mease's grievance on the grounds that it contained multiple unrelated issues rendered the grievance process unavailable.  The undersigned therefore recommends that the Court deny Defendants' motion for summary judgment with respect to Mease's retaliation claim against McKinney, Lemmerman, and Wonnacott for depriving Mease of his personal property and religious services and terminating his employment (Claim One).

---

[13]    In fact, it requires such a background.  MDOC P.D. 03.02.130 ¶ S.

In sum, the undersigned finds that there are no genuine issues of material fact with respect to Mease's grievances.  The only claim that Mease exhausted through the grievance process is his claim against COs Lemmerman and McKinney for refusing to sign off on his itinerary to go to the URF Law Library on June 29, 2019 (Claim Three).  But the MDOC unreasonably applied MDOC P.D. 03.20.130 ¶ J(1) when it rejected URF-19-06-1554-28C, rendering the grievance process unavailable to Mease with respect to his claim against McKinney, Lemmerman, and Wonnacott for retaliating against Mease by depriving him of his personal property and religious services and terminating his employment (Claim One).  As such, the undersigned recommends denying summary judgment with respect to those claims.  The undersigned must now consider whether Mease exhausted any of his misconduct related claims (Claims Two, Four, Five, Six, Seven, Eight, and Nine) through the misconduct hearing process.

### b.  The Misconduct Hearing Process

Mease's relevant misconduct hearings, reports, and appeals are summarized below.

| Charge and Date | Issuing Officer | Hearing Officer | Misconduct Hearing Defense | Results of Misconduct Hearing | Misconduct Appeal Defense | Results of Misconduct Appeal |
|---|---|---|---|---|---|---|
| Insolence<br><br>June 29, 2019<br><br>(ECF No. 1, PageID.42-44.) | Lemmerman | Captain J.Burke | Mease claimed that he was not guilty, and that staff were out to get him. | Guilty, sanctions include five days toplock. | The video that Burke reviewed to verify the allegations in the misconduct ticket did not include audio. Lemmerman, McKinney, Simpson, and Wech are abusing the misconduct process and utilizing excessive sanctioning. | Appeal approved- Deputy Warden Yon found insufficient evidence supporting the alleged insolence. |

| Charge and Date | Issuing Officer | Hearing Officer | Misconduct Hearing Defense | Results of Misconduct Hearing | Misconduct Appeal Defense | Results of Misconduct Appeal |
|---|---|---|---|---|---|---|
| Excessive Noise<br><br>June 29, 2019<br><br>(*Id.*, PageID.53-56.) | McKinney | Wech | Mease asked how he could have been loud when he was written another misconduct just a minute before this one. | Guilty, sanctions include five days toplock. | Mease has pending grievances against Wech for conspiring with McKinney, Lemmerman, and Simpson to retaliation.  Wech misstated Mease's defense in the misconduct report, and that Mease instead had asked how it was possible that McKinney was writing the misconduct ticket at the same time Mease was being insolent towards him, per Lemmerman's misconduct ticket.  Mease asserted that McKinney was using the misconduct process to get him terminated and Wech was helping him.  Mease said the misconducts were retaliatory. | Appeal denied-Assistant Deputy Warden found that Mease did not provide sufficient evidence that the officers violated policy. |
| Violation of Posted Rule— Standing in the TV Room<br><br>June 30, 2019<br><br>(*Id.*, PageID.64-67.) | Simpson | McKinney | Mease said there were no chairs where he stood.  Mease had nothing further to add. | Guilty, sanctions include five days toplock. | Mease was in the TV Room to look at the bulletin boards and there were no chairs by the bulletin board.  CO McKinney arbitrarily imposed toplock sanction to retaliate against Mease, and to get him terminated from his job. | Appeal denied-Assistant Deputy Warden found that Mease did not provide sufficient evidence that the officers violated policy. |
| Violation of Posted Rule— profanity<br><br>July 5, 2019 | Simpson | McKinney | None.  Mease refused to attend the hearing. | Guilty, sanctions include five days toplock. | Mease told McKinney he was not guilty and never said what the misconduct alleged.  He did not refuse to attend the hearing.  Mease maintained that Simpson, Wech, McKinney, Lemmerman, and Wonnacott are | Appeal denied-Acting Assistant Deputy Warden found that Mease did not provide sufficient |

| Charge and Date | Issuing Officer | Hearing Officer | Misconduct Hearing Defense | Results of Misconduct Hearing | Misconduct Appeal Defense | Results of Misconduct Appeal |
|---|---|---|---|---|---|---|
| (*Id.*, PageID.70-73.) | | | | | conspiring and abusing the misconduct process to subject Mease to excessive sanctions and terminate his employment.  Simpson purposefully issued the misconduct when most administrators were on vacation. | evidence that the officers violated policy. |

As noted above, a plaintiff who claims that MDOC staff retaliated against him by issuing him a Class II or III misconduct ticket must raise retaliation at the misconduct hearing and, if found guilty, in his appeal.  *Rush*, 2019 WL 3755967, at *6; MDOC PD 03.03.105 ¶¶ UUU-XXX.  Defendants aver that Mease failed to exhaust any of his retaliatory misconduct ticket claims because he did not raise the issue of retaliation during his misconduct hearings.  (ECF No. 33, PageID.132.)  In response, Mease argues that the misconduct hearing process was in effect unavailable to him with respect to his claims; Mease's remaining retaliation claims are against the very officers who conducted his misconduct hearings.    (ECF No. 34, PageID.204.)  According to Mease, the misconduct hearing officers were not fair or impartial, and did not compile accurate hearing reports.  (*Id.*, PageID.204-205.)  Nevertheless, Mease says that the statements he made during his hearings were sufficient, and that he made claims of retaliation in his appeals.  (*Id.*, PageID.206.)

As an initial matter, the undersigned notes that this Court has previously determined that hearing reports alone are insufficient to establish a plaintiff's failure to exhaust retaliatory misconduct ticket claims.  As noted by the Court in *Annabel v.*

*Novak*, without evidence that the hearing officer "generally was obligated to, or did in this particular instance, record in the hearing report or investigation report every statement, assertion, defense, or claim made by Plaintiff," the hearing report does not prove that Mease failed to raise retaliation. *Annabel v. Novak*, No. 1:19-CV-199, 2020 WL 3884313, at *3 (W.D. Mich. Mar. 2, 2020), *report and recommendation adopted*, No. 1:19-CV-199, 2020 WL 1921530 (W.D. Mich. Apr. 21, 2020). Though they could have, Defendants did not secure affidavits from the hearing officers regarding the hearings. And while Mease has implied but not directly stated that he asserted retaliation in the initial hearings, Mease does not bear the burden of establishing that he exhausted his claims. Accordingly, the existence of a genuine issue of material fact with respect to Mease's misconduct-related claims depends upon the statements in his written appeals. The undersigned addresses each of Mease's misconduct-related claims in turn.

### i. Claim Two

Defendants rely on the misconduct hearing reports and appeals attached to Mease's complaint to support their assertion that Mease did not raise retaliation at the initial hearings and therefore failed to exhaust (ECF No. 1, PageID.42-44, 53-56, 64-67, 70-73). The hearing reports and appeals attached to Mease's complaint correlate to the following misconducts and claims: the June 29, 2019 insolence misconduct ticket written by CO Lemmerman (Claim Four), the June 29, 2019 excessive noise misconduct ticket issued by CO McKinney (Claim Five), the June 30, 2019 violation of posted rule misconduct ticket written by CO Simpson (Claim Six),

and the July 5, 2019 violation of posted rule misconduct ticket written by CO Simpson (Claim Eight). Mease did not attach, and Defendants did not provide, the misconduct hearing report for the misconduct written by CO Lemmerman on May 31, 2019. Nor do Defendants assert that the misconduct ticket was never issued. Accordingly, there is a genuine issue of material fact with respect to this claim.

### ii. Claim Four

In his appeal to the June 29, 2019 insolence misconduct ticket written by CO Lemmerman, Mease stated the following:

> Prisoner appeals as: [1] Lemmerman states that he "observed prisoner Mease say . . . " this implies that the reporter read prisoners lips instead of hearing anything; [2] the hearing officer's viewing of the video evidences only that prisoner was "having words with officers" and "looks upset." Which is not evidence of what was said. Hearing Officer's conclusory statements that "the description of the violation meets the criteria of the charge" is no basis for a finding of guilt; [3] prisoner stated that the reporter stated, as a witness, that he observed prisoner being insolent to McKinney at 6:30 AM — why would McKinney write a Class III stating that at 6:31 AM prisoner was excessively loud in lobby without mention of being called degrading names?; and [4] Hearing Officer and Officers Lemmerman, McKinney, Simpson, and Wech have demonstrated their power to abuse the Class II and III Misconduct process by their excessive sanctioning to result in loss of employment and privileges. End.

(ECF No. 1, PageID.44.)

To Mease's credit, he did assert that Officers Lemmerman, McKinney, Simpson, and Wech were using their power to abuse the misconduct process and issue excessive sanctions so that Mease would be terminated and lose privileges. But Mease did not state that the COs were retaliating against him. Nor did Mease allege that the COs were abusing the misconduct process by issuing false misconduct

tickets, or that the abuse was motivated by his protected conduct.  Accordingly, even construing the facts in the light most favorable to Mease, the undersigned finds that no reasonable juror could determine that Mease's appeal exhausted this retaliatory misconduct claim.

### iii.  Claim Five

In his appeal to the June 29, 2019 excessive noise misconduct issued by CO McKinney, Mease stated the following:

> Prisoner has several grievances pending involving Wech for retaliation and conspiring with McKinney, Lemmerman, and Simpson.  Wech misstated prisoner's defense in the report.  Prisoner stated "why would McKinney write an excessive noise ticket at 6:31 AM, when at 6:30 AM I allegedly called him a fat M.F.?"  Wech responded, "I don't know, I'm giving you 5 days."  Prisoner appeals because: 1) MDOC Employee Work Rules required McKinney to report the alleged rule violation at 6:20 AM which Lemmerman as witness reported.  This evidences that McKinney [illegible] to manipulate the Class III Misconduct process to get prisoner fired from MSI; and 2) Wech abused the progressive sanctioning standards as stated by Warden Horton in the June 19, 2019 Warden's Forum Minutes.  Prisoner has received one Class II Misconduct since 2013 and it was over 6 months ago at URF, until the retaliatory series of misconducts since June 29, 2019.  Wech sanctioned 5 days toplock to allow McKinney to sanction more toplock on Simpson's pending misconducts.  End.

(*Id.*, PageID.55.)

In contrast to Mease's appeal of the insolence misconduct charge, Mease's appeal to the excessive noise misconduct clearly accuses CO McKinney of issuing the misconduct ticket to retaliate against him.  Accordingly, there is a genuine issue of fact as to whether Mease exhausted this claim.

### iv.  Claim Six

In his appeal to the June 30, 2019 violation of posted rule misconduct written by CO Simpson, Mease stated:

> Prisoner appeals because he was in the TV Room to look at the menu and there is obviously no chairs by the menus, Rules, or other posted materials therein.   Rule #22 is being enforced as a Catch 22, and unreasonable or [ir]rational based upon the fact of postings made in TV Room bulletin boards.  C. McKinney refused to accept the actual facts as stated above, and arbitrarily imposed this sanction to retaliate for prior complaint and grievances concerning religious discrimination. McKinney also accomplished his goal in having Prisoner terminated by imposing toplock sanctions.

(*Id.*, PageID.66.)

Here, Mease does not assert any claims of retaliation or even abusive conduct by CO Simpson, who issued the misconduct ticket.  As such, Mease failed to exhaust this claim.

### v.  Claim Seven

This claim is different from those involving the issuance of a retaliatory misconduct ticket.  Here, Mease asserts that CO Wech found Mease guilty of a misconduct ticket and gave him the maximum allowable sanction in order to retaliate against him.  Because the alleged adverse action occurred after the initial misconduct hearing, it is clear that Mease could not have raised retaliation at the hearing.  As such, Defendants' argument that Mease did not exhaust his misconduct-related claims because he did not assert retaliation in his initial hearing is inapposite. Moreover, Defendants do not set forth the proper procedure for exhausting this kind of claim.  As failure to exhaust is an affirmative defense, Defendants bear the burden

31

of showing that Mease failed to exhaust the available administrative remedies. Because they do not even set forth the available remedies, let alone show that Mease failed to exhaust those remedies, the undersigned respectfully recommends that this Court deny summary judgment as to this claim. *See Hankins v. Woodward*, No. CV 16-13845, 2017 WL 4276939, at *1-2 (E.D. Mich. Aug. 4, 2017) (denying summary judgment based on exhaustion because Defendants did not address the appropriate procedure for a claim related to the sanctions imposed after a misconduct hearing), *report and recommendation adopted sub nom. Hankins v. Woodard*, No. 16-CV-13845, 2017 WL 4236576 (E.D. Mich. Sept. 25, 2017)

### vi.  Claim Eight

Although the undersigned noted above that misconduct hearing reports are generally insufficient to establish a plaintiff prisoner's failure to raise retaliation at the initial misconduct hearing, the undersigned acknowledges that the misconduct hearing report for this claim is unique.  More specifically, the hearing report for this claim reflects that Mease refused to attend his misconduct hearing.  (ECF No. 1, PageID.71.)  In the absence of evidence to the contrary, this may be sufficient to establish that Mease failed to exhaust his retaliation claim for the July 5 misconduct ticket.  But in Mease's appeal to the misconduct charge, Mease asserted that he did in fact attend the misconduct hearing.  (Id., PageID.72.)  The undersigned must therefore consider whether Mease sufficiently raised retaliation in his misconduct appeal.

Mease stated the following in his appeal to the July 5, 2019, violation of posted rule misconduct written by CO Simpson:

> Contrary to the Hearing Report, Prisoner was called to Hearing by McKinney who came into cell to retrieve him.  Prisoner went to Officer's Desk and stated, "Not guilty — I did not say what's alleged in the misconduct."  Prisoner returned to cell.  Request camera reviewed. Prisoner maintains that Simpson, Wech, McKinney, Lemmermon, and Wonnacott have conspired and used the Class III misconduct process, the fact that most administrators are on 4th of July weekend vacation, and flat out lies to subject him [to] excessive sanctions for alleged minor misconduct to terminate employment at MSI and to end over 17 years of conflict with staff behavior.  Prisoner behavior from here on out is what staff is allowed to make it.  End.

(*Id.*, PageID.72.)

Mease's allegations in this appeal are substantially the same as his allegations in his appeal for the insolence misconduct above.  Mease asserted that Defendants were conspiring and using the misconduct process to issue excessive sanctions.  But Mease did not state that Defendants were retaliating against him.  He did not allege that the Officers were abusing the misconduct process by issuing false misconduct tickets or that the abuse was motivated by his protected conduct.  Moreover, by Mease's own account, he did not raise retaliation in his misconduct hearing.  He stated only that he was not guilty of the conduct alleged.  Accordingly, even construing the facts in the light most favorable to Mease, the undersigned finds that no reasonable juror could determine that Mease's appeal exhausted this retaliatory misconduct claim.

### vii.  Claim Nine

Here, Mease asserts that CO McKinney found Mease guilty of a misconduct ticket and gave him the maximum allowable sanction in order to retaliate against him.  As with Mease's retaliatory sanction claim against CO Wech, it is clear that Mease could not have raised retaliation at the initial hearing.  Once again, the undersigned respectfully recommends that this Court deny summary judgment as to this claim because Defendants do not set forth the available remedies or show that Mease failed to exhaust those remedies.  *See Hankins*, 2017 WL 4276939, at *1-2.

In sum, the undersigned finds that there are genuine issues of material fact with respect to the following:

- Mease's retaliation claim against CO Lemmerman for issuing the May 31, 2019 misconduct ticket (Claim Two),

- Mease's retaliation claim against CO McKinney for issuing the June 29, 2019 excessive noise misconduct ticket (Claim Five),

- Mease's retaliation claim against CO Wech for finding Mease guilty of the June 29, 2019 excessive noise misconduct and issuing excessive sanctions (Claim Seven), and

- Mease's retaliation claim against CO McKinney for finding Mease guilty of the July 5, 2019 violation of posted rule misconduct and issuing excessive sanctions (Claim Nine).

The undersigned also finds that there are no genuine issues of material fact and that Mease failed to exhaust the following:

- Mease's retaliation claim against CO Lemmerman for issuing an insolence misconduct on June 29, 2019 (Claim Four),

- Mease's retaliation claim against CO Simpson for issuing a violation of posted rule misconduct on the June 30, 2019 (Claim Six), and

- Mease's retaliation claim against CO Simpson for issuing a violation of posted rule misconduct on July 5, 2019 (Claim Eight).

## VI.    Recommendation

The undersigned respectfully recommends that the Court **deny** Defendants' motion for summary judgment based on exhaustion with respect to the following:

- Mease's retaliation claim against McKinney, Wonnacott and Lemmerman for depriving him of his personal property and religious services and terminating his employment (Claim One),

- Mease's retaliation claim against Lemmerman for issuing a misconduct ticket on May 31, 2019 (Claim Two),

- Mease's retaliatory misconduct claim against McKinney (Claim Five),

- Mease's retaliatory sanction claim against Wech (Claim Seven), and

- Mease's retaliatory sanction claim against McKinney (Claim Nine).

The undersigned respectfully recommends that the Court **grant** Defendants' motion for summary judgment with respect to the following:

- Mease's retaliation claim against CO Lemmerman for issuing a misconduct ticket on June 29, 2019 (Claim Four),

- Mease's retaliation claim against CO Simpson for issuing a misconduct ticket on June 30, 2019 (Claim Six), and

- Mease's retaliation claim against CO Simpson for issuing a misconduct ticket on July 5, 2019 (Claim Eight).

If the Court accepts this recommendation, Claims One, Two, Three, Five, Seven, and Nine will remain, and CO Simpson will be dismissed from the case.


Dated:   July 27, 2022                                    /s/ *Maarten Vermaat*
                                                         MAARTEN VERMAAT
                                                         U. S. MAGISTRATE JUDGE


## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).